UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Dale Davis,                                              File No. 21-cv-00657 (ECT/DTS)

      Plaintiff,

v.

                                              **OPINION AND ORDER**

Principal Life Insurance Company,
Unum Life Insurance Company of America,
Tick Tock Benefits, LLC, and
Aspen Aerials, Inc.,

      Defendants.

---

Stephanie M. Balmer, Falsani, Balmer, Peterson & Balmer, Duluth, MN, for Plaintiff Dale Davis.

Edna S. Kersting and John P. Loringer, Wilson Elser Moskowitz Edelman & Dicker LLP, Chicago, IL, and Milwaukee, WI, for Defendant Principal Life Insurance Company.

Terrance J. Wagener and Jake Elrich, Messerli & Kramer P.A., Minneapolis, MN, for Defendant Unum Life Insurance Company of America.

Jerilyn Jacobs, Melissa Anne Kirschner, and William E. Keeler, III, Crivello Carlson S.C., Eau Claire, WI, and Milwaukee, WI, for Defendant Tick Tock Benefits, LLC.

R. Thomas Torgerson, Hanft Fride P.A., Duluth, MN, for Defendant Aspen Aerials, Inc.

---

      This case arises from the denial of Plaintiff Dale Davis's claim for long-term disability (or "LTD") benefits under a welfare benefit plan (the "Plan") sponsored by his former employer, Aspen Aerials, Inc. Davis's benefits claim was denied essentially because the Plan lacked insurance coverage during a one-month gap in December 2018. Unsure who is ultimately responsible for his benefits or injuries resulting from that

coverage gap, Davis has sued: Aspen Aerials; Tick Tock Benefits, LLC, a benefits consultant to Aspen Aerials; Principal Life Insurance Company, the Plan's insurer and claims fiduciary from January 1, 2010, through at least November 30, 2018; and Unum Life Insurance Company of America, the Plan's insurer and claims fiduciary beginning January 1, 2018.

Davis asserts claims against Principal under ERISA[1], and Principal seeks dismissal of these claims under Federal Rule of Civil Procedure 12(b)(6). Davis has asserted a plausible claim for benefits against Principal under 29 U.S.C. § 1132(a)(1)(B). Davis also has pleaded a plausible alternative ERISA claim for other appropriate equitable relief under § 1132(a)(3). Principal's motion will therefore be denied to the extent Principal seeks dismissal of these claims. Davis has not pleaded a plausible claim for breach of fiduciary duty under § 1132(a)(2), so Principal's motion will be granted in this respect. Davis's claim that Principal violated § 1133 is better understood not as a freestanding claim, but as one basis for his primary § 1132(a)(1)(B) claim and his alternative § 1132(a)(2) claim.

I

The relevant facts are few and, at least for purposes of this motion, straightforward.[2] Davis worked as a "hydraulic assembler with . . . Aspen Aerials from November 2007 through October 2020." Am. Compl. [ECF No. 50] ¶ 33. Davis participated in the Plan

---

[1]   The Employee Retirement Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

[2]   In describing the relevant facts and resolving this motion under Rule 12(b)(6), all factual allegations in Davis's amended complaint are accepted as true, and all reasonable inferences are drawn in his favor. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

throughout his employment. *Id.* ¶ 13. As noted, Principal insured the Plan and served as claim fiduciary at least until November 30, 2018, *id.* ¶ 17, and Unum served in these roles beginning January 1, 2019, *id.* ¶ 18.³ Davis "became unable to work due to disabling conditions as of March 20, 2019." *Id.* ¶ 52. He filed benefit claims with both Principal and Unum. *Id.* ¶ 53. Principal did not issue an administrative decision regarding Davis's claim. *Id.* ¶ 54. Unum denied Davis's claim. *Id.* ¶ 55. Unum's adverse benefit determination seems to have been based on its findings that Davis's disability resulted from a "pre-existing condition" (however Unum defined that term) and that Davis was not insured under a "prior policy" when Unum became the Plan's insurer and claims fiduciary. *Id.* ¶¶ 30, 55. After exhausting his administrative remedies with both Principal and Unum, *id.* ¶¶ 58–59, Davis filed this suit, *see* Compl. [ECF No. 1].

Davis asserts ERISA claims against Principal in Counts I and II of his Amended Complaint. Am. Compl. ¶¶ 60–73. Though the title Davis gives his ERISA claims in Count I suggests they are limited to breach-of-fiduciary-duty claims, *id.* at 12 (labeling

---

³ Davis does not allege facts describing why the Principal-to-Unum move occurred. Principal attached as an exhibit to its opening brief a letter that is relevant to this question. The letter, dated November 26, 2018, is addressed to "Solutions Insurance Agencies." Principal's Mem. in Supp., Ex. B [ECF No. 56-2]. In it, an account manager with Aspen Aerials wrote: "Aspen Aerials would like to request that all current policies with Principal Life Insurance Company be cancelled effective December 1, 2018." *Id.* Because this document is not referenced in or attached to Davis's amended complaint, it seems inappropriate to consider it in resolving Principal's motion notwithstanding the absence of any party's explicit objection to its consideration. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). If it were considered, the letter's precise implications are not clear. It is one letter. It was not addressed to Principal. We do not know whether there were other communications surrounding or in addition to the letter. The bottom line is that it would be a mistake to give the letter dispositive weight in the context of this Rule 12(b)(6) motion.

3

Count I as "**BREACHES OF FIDUCIARY DUTIES PURSUANT TO 29 U.S.C. § 1132**"), a close reading of these claims shows they go beyond that label. Davis pretty clearly asserts a claim against Principal for benefits under 29 U.S.C. § 1132(a)(1)(B). He alleges, for example, that Principal's denial of his claim for long-term disability benefits "was wrongful, arbitrary, capricious," and unsupported by the record and "contrary to" the terms of Principal's policy. Am. Compl. ¶¶ 69–70. And in his prayer for relief, Davis seeks "accrued sums of LTD benefits due . . . from March 20, 2019 through the present." *Id.* at 27, ¶ 2. Davis plainly intends to assert an ERISA breach-of-fiduciary-duty claim. He labels Count I as such, and he alleges that Principal violated its fiduciary duties in several ways. *Id.* ¶¶ 61, 63, 64(a)–(e), 68. Davis does not tether this claim to a specific ERISA provision. *See id.* ¶¶ 60–70. Though he seeks a judgment enforcing "the Principal policy for the month of December 2018 so as to maintain [his] continuous LTD coverage[,]" *id.* at 26, ¶ 1, Davis does not identify the equitable remedy on which he grounds this request. Finally, Davis asserts a claim under 29 U.S.C. § 1133, alleging that Principal's failure to respond to his administrative claim or provide a "full and fair review" of his claim violated this section. *Id.* ¶¶ 71–73.[4]

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all

---

[4] Davis asserts the same ERISA claims against Unum. Am. Compl. ¶¶ 60–73. Against Aspen Aerials and Tick Tock, he asserts common-law claims for equitable estoppel and misrepresentation. *Id.* ¶¶ 74–89. And against just Tick Tock, Davis asserts a negligence claim. *Id.* ¶¶ 90–103.

reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792. Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Davis asserts a plausible § 1132(a)(1)(B) claim for benefits.* Principal first argues that Davis does not assert this claim. *See* Principal's Reply to Aspen Aerials at 1, 3 [ECF No. 67]. Principal has a point. As noted, Davis labels his ERISA claims as "**BREACHES OF FIDUCIARY DUTIES**," and he does not cite § 1132(a)(1)(B). But labels can be misleading. Davis alleges in substance that Principal's denial of his claim for long-term disability benefits "was wrongful, arbitrary, capricious," and "contrary to" Principal's policy, Am. Compl. ¶¶ 69–70, and he seeks benefits, *id.* at 27, ¶ 2. These are the hallmarks of a § 1132(a)(1)(B) claim, and that is enough under Rule 8(a)'s notice-pleading standard.

Principal next argues that any benefits claim would be implausible because Davis's disability arose in March 2019, Am. Compl. ¶ 52, well after Principal's role as insurer and claims fiduciary terminated effective December 1, 2018, Principal's Reply to Aspen Aerials at 3, 5–6. This seems to be the main fighting issue between Principal and everyone else. The short answer to this argument is that Davis plausibly alleges that the Principal policy—and thus Principal's role as insurer and claims fiduciary—remained in effect until after Davis became disabled, but why this is so requires some explanation.

5

Davis (backed by Aspen Aerials) points to a provision entitled "**Article 4 – Cancellation Notification**" that provided:

> The cancellation of this Group Policy will not be effective unless The Principal has made a good faith effort to notify all covered Members of the cancellation at least 30 days before the effective cancellation date. For this purpose, "good faith effort" means The Principal has made a good faith effort to provide Written notice to the home address of all insured Members . . .
>
> \*   \*   \*
>
> This article does not apply if the Group Policy is replaced, or if The Principal has reasonable evidence to indicate that it will be replaced, by a substantially similar policy.
>
> In no event will this article extend coverage under this Group Policy more than 120 days beyond the date coverage would otherwise terminate based on the terms of the Group Policy.

Principal's Mem. in Supp. Ex. A at 33–34 [ECF No. 56-1].

Davis alleges that Principal was required to give notice in compliance with this provision but did not (ever) notify him of the policy's November 30, 2018 cancellation. Am. Compl. ¶¶ 17, 29, 41, 64. And he and Aspen Aerials argue that, under the provision, this failure means (1) the intended November 30, 2018 cancellation was not effective and (2) coverage was extended under the policy for "120 days beyond the date coverage would otherwise terminate based on the terms of the Group Policy." Pl.'s Mem. in Opp'n at 5–8 [ECF No. 63]; Aspen Aerials' Mem. in Opp'n at 2–7 [ECF No. 62]. Davis and Aspen Aerials say that this 120-day extension, if it ran from November 30, 2018, means the Principal policy would have provided coverage through roughly March 31, 2019, or past the date Davis became disabled.

6

Principal advances three arguments aimed at establishing that it was not required to give notice under the Cancellation Notification article, but none of these is persuasive (at least not in this Rule 12(b)(6) context).  First, Principal suggests that the policy was "terminated," not "canceled," meaning the Cancellation Notification provision cannot apply.  Principal's Mem. in Supp. at 12.  The policy does not seem to support this argument, certainly not definitively.  It defines neither "termination" nor "cancellation" explicitly, *see* Principal's Mem. in Supp. Ex. A at 14–25 ("**PART I – DEFINITIONS**"), but seems to treat a "cancellation" as a type of "termination" when it says that a "termination" may be "subject to the Cancellation Notification provisions of Article 4." *Id.* at 34.[5]  Regardless, no authority has been cited adopting contract- or ERISA-specific definitions of these terms or otherwise establishing that what occurred here cannot plausibly be labeled a "cancellation" of the Principal policy.[6]  Second, Principal argues that it was not required to give notice under the Cancellation Notification provision because Aspen Aerials "replaced" the Principal policy with a "substantially similar policy," an exception to the Cancellation Notification requirement.  Principal's Mem. in Supp. at 12; *id*., Ex. A at 34.

---

[5]   Dictionaries seem to reflect the understanding that a "cancellation" is a type of "termination."  As a rule, they define "cancellation" to mean "the act of causing something to end or no longer produce a certain effect: a decision to stop something from being effective or valid."  *E.g.*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/cancellation (last visited Nov. 3, 2021).  They define "termination," on the other hand, as an "end in time or existence: conclusion."  *E.g.*, *id*., https://www.merriam-webster.com/dictionary/termination (last visited Nov. 3, 2021).

[6]   In its opening brief, Principal explained that "Aspen requested *cancellation* of all group insurance policies issued by Principal Life to Aspen as of December 1, 2018."  Principal's Mem. in Supp. at 4 (emphasis added); *see also id*. at 12.

7

Davis, however, alleges facts plausibly showing that the Unum policy did not "replace," and was not "substantially similar" to, the Principal policy. Specifically, Davis alleges that there was a one-month gap between cancellation of the Principal policy and the effective date of the Unum policy, Am. Compl. ¶¶ 17–18, 50, and he alleges that this gap triggered the denial of his claim under the Unum policy as a pre-existing condition when it would not have been denied as such under the Principal policy, *id.* ¶¶ 30, 55. It is plausible that a one-month coverage gap means the Unum policy did not "replace" the Principal policy and that the Unum policy was not substantially similar because it permitted the denial of Davis's claim for a reason (apparently) not permitted under the Principal policy. Third, Principal argues that Aspen Aerials requested cancellation on five days' notice, "making it impossible for Principal" to comply with the Cancellation Notification provision. Principal's Mem. in Supp. at 12. This argument invites consideration of facts not alleged in Davis's Amended Complaint—*i.e.*, the date Principal received Aspen Aerials' cancellation notice and whether Principal had enough time to comply with its notice obligations—and that would be inappropriate in the context of a Rule 12(b)(6) motion.

*Davis alleges a plausible alternative claim for other equitable relief under § 1132(a)(3).* A plan participant is allowed under § 1132(a)(3) to seek equitable remedies for a plan fiduciary's breach of its fiduciary obligations. *Varity Corp. v. Howe*, 516 U.S. 489, 510–13 (1996). In *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), "the Supreme Court identified three possible 'equitable' theories of recovery under § 1132(a)(3) for an administrator's breach of fiduciary duty: surcharge, reformation, and estoppel." *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 720 (8th Cir. 2014). A breach-of-fiduciary-duty claim

under § 1132(a)(3) may be pleaded in the alternative to a benefits claim under § 1132(a)(1)(B). *Silva*, 762 F.3d at 726.

Here, although Davis is not explicit about the precise source of his breach-of-fiduciary-duty claim against Principal, he alleges that Principal breached a series of fiduciary duties in connection with his benefits claim, Am. Compl. ¶¶ 64(a)–(e), and he seeks an order enforcing the Principal policy during "December 2018 so as to maintain [his] continuous LTD coverage," *id.* at 26 ¶ 1. This request is separate from Davis's request for benefits. *Id.* at 27 ¶ 2. Under these circumstances, Davis's request that the Principal policy be enforced as if it were effective throughout December 2018 is best understood as an alternative request for either reformation or estoppel under § 1132(a)(3) should his § 1132(a)(1)(B) benefits claim fail.

Principal argues that Davis's § 1132(a)(3) claim is implausible for two reasons, but neither of the arguments warrants dismissal. First, as with Davis's benefits claim, Principal asserts that Davis does not plead a § 1132(a)(3) claim. Principal says Davis pleads no fiduciary breach and seeks no equitable relief. Principal's Mem. in Supp. at 3–4, 15. The imprecision with which Davis pleads his claims makes this argument understandable, but as explained in the preceding paragraph, the better understanding of Davis's Amended Complaint is that he pleads an alternative § 1132(a)(3) claim. *Cf. Silva*, 762 F.3d at 727 ("At the motion to dismiss stage, however, it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide effective relief."). Second, Principal argues that it was not a fiduciary when Davis's claims arose because its policy and

9

accompanying fiduciary duties terminated December 1, 2018.  Principal's Mem. in Supp. at 9.  For the same reasons explained earlier—*i.e.*, Davis plausibly alleges that Principal had a duty to notify him of the policy's cancellation but didn't, resulting in an extension of the policy's coverage—this is not persuasive.

*Davis has not pleaded a plausible claim for breach of fiduciary duty under § 1132(a)(2)*.  Pursuant to 29 U.S.C. § 1132(a)(2), "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title."  Section 1109 provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).  Thus, § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries."  *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 256 (2008); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009); *Gelfland v. Metro. Life Ins. Co.*, 28 F. Supp. 3d 903, 908-09 (D. Minn. 2014).  Here, Davis alleges only individual injuries.  He seeks no recovery or remedy on behalf of the Plan.  Therefore, Davis has not alleged a plausible breach-of-fiduciary-duty claim under § 1132(a)(2).

*Davis has not pleaded a plausible freestanding claim for relief under § 1133*.  This section provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. An alleged violation of this section may form the basis of a claim under § 1132(a), but nothing in its text or structure suggests it provides a freestanding cause of action, and neither Davis nor Aspen Aerials has identified authority suggesting it does. Of course, Davis remains free to argue that Principal's alleged violations of this provision support his claims for relief under § 1132(a).

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Principal Life Insurance Company's Motion to Dismiss [ECF No. 55] is **GRANTED IN PART and DENIED IN PART** as follows:

1. The motion is **GRANTED** with respect to Plaintiff's claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and Plaintiff's freestanding claim for relief under 29 U.S.C. § 1133. These claims are dismissed without prejudice.

2. In all other respects, the motion is **DENIED**.

Dated: November 3, 2021

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court